FILED

COPY

2013 JUN -7 AM 11: 28

CLERK, U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY_____

THOMAS V. GIRARDI — STATE BAR NO. 36603
ROBERT W. FINNERTY — STATE BAR NO. 119775
**GIRARDI | KEESE**
1126 Wilshire Blvd
Los Angeles, California, 90017
Telephone (213) 977-0211
Facsimile (213) 481-1554
Email: tgirardi@girardikeese.com
Email: rfinnerty@girardikeese.com

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| GET LIM and EK TEK ENG, individually and as successors-in-interest of JAZMYNE HA ENG,<br><br>Plaintiffs,<br><br>vs.<br><br>THE COUNTY OF LOS ANGELES; BRIAN VANCE, DANIEL ESQUEDA, JEREMIAH SONG, ALLISON MELENDEZ and DOES 5-10.,<br><br>DEFENDANTS. | CASE NO. 2:12-cv-10892 SVW(PJW)<br><br>**PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DAMAGES**<br><br>1) EXCESSIVE USE OF FORCE (42 U.S.C. § 1983);<br>2) LOCAL GOVERNMENT LIABILITY (42 U.S.C. § 1983);<br>3) FAILURE TO TRAIN (42 U.S.C. § 1983); |

-1-

PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DAMAGES

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

COMES NOW PLAINTIFFS GET LIM, and EK TEK ENG individually and as successor's-in-interest of JAZMYNE HA ENG (collectively referred to as "**PLAINTIFFS**"), for causes of action against the DEFENDANTS, and each of them, complains and alleges as follows:

## I.

## INTRODUCTION

1.  This complaint arises out of an incident occurring on January 4, 2012 at the Asian Pacific Family Center ("APFC"), located at 9353 Valley, Blvd., Rosemead, California 91770 (hereinafter "THE LOCATION").

2.  At THE LOCATION, Decedent JAZMYNE HA ENG was brutally shot and killed by Los Angeles County Sheriff's Deputies.

3.  JAZMYNE HA ENG tragically died from a direct kill-shot to her chest by the Los Angeles County Sheriff's Department Deputies (hereinafter "DEPUTIES"). The DEPUTIES shot JAZMYNE an additional time in her right hand. As a result of the DEPUTIES' unauthorized and unprovoked use of excessive and deadly force, JAZMYNE HA ENG suffered pain, mental anguish, emotional and physical distress, and ultimately this action led to her tragic death. In addition, JAZMYNE HA ENG's family SUSAN P. ENG, VINCENT ENG, VINLY ENG, GET LIM, EK TEK ENG, AND NANCY ENG (hereinafter "PLAINTIFFS") suffered severe emotional distress, pecuniary damages, and loss of society, comfort, services, attention, and support as a result of the DEPUTIES' use of excessive force on their beloved family member JAZMYNE.

4.  On June 29, 2012, PLAINTIFFS timely served on DEFENDANTS COUNTY OF LOS ANGELES and LOS ANGELES COUNTY SHERIFF'S DEPARTMENT, a tort claim in accordance with Government Code §§910 and 911.2, incorporated herein. That on or about August 2, 2012, PLAINTIFF's tort claim was rejected.

///
///
///

**PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DAMAGES**

## II.

### THE PARTIES

5.    JAZMYNE HA ENG was a resident of the city of Rosemead, in the County of Los Angeles, State of California during all times relevant to this Complaint.  JAZMYNE HA ENG was survived by her parents, GET LIM and EK TEK ENG.

6.    GET LIM and EK TEK ENG (hereinafter "PLAINTIFFS"), bring and maintain the present action and all claims asserted herein individually and as successors-in-interest of JAZMYNE HA ENG pursuant to California's *Code of Civil Procedure*, Section 377.20.

7.    PLAINTIFFS, GET LIM, and EK TEK ENG, are the successors in interest of JAZMYNE.  Pursuant to California's *Code of Civil Procedure*, Section 377.60, GET LIM and EK TEK ENG have standing to bring a wrongful death action because they are entitled to the property of the decedent by intestate succession.  California's *Probate Code*, Section 6402.

8.    PLAINTIFFS, at all times mentioned herein, were residents of the County of Los Angeles, California.

9.    PLAINTIFFS are informed and believe, and thereupon allege, Defendant COUNTY OF LOS ANGELES, (hereinafter "COUNTY") is now, and at all times mentioned in this Complaint was, a municipal corporation and political subdivision organized and existing under the laws of the State of California and owns, operates, manages, directs and controls the LOS ANGELES COUNTY SHERIFF'S DEPARTMENT (hereinafter "LACSD"), an operating department of the COUNTY.

10.    Upon the filing of the initial complaint, the plaintiffs, being ignorant of the true name of the defendant and having designated the defendant in the complaint by the fictitious name of DOE 1 and having discovered the true name of the defendant to be BRIAN VANCE amends the complaint by substituting the true name for the fictitious name where it appears in the complaint. PLAINTIFFS are informed and believe, and thereupon alleges Defendant, DEPUTY BRIAN VANCE ("VANCE"), is now, and at all material times was employed as a sheriff, deputy,

–3–

**PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DAMAGES**

1 | sergeant, detective, and/or civilian employee, agent and representative of the LAW
2 | ENFORCEMENT DEFENDANTS.

3 |     11.   Upon the filing of the initial complaint, the plaintiffs, being ignorant of the true name
4 | of the defendant and having designated the defendant in the complaint by the fictitious name of
5 | DOE 2 and having discovered the true name of the defendant to be DANIEL ESQUEDA amends
6 | the complaint by substituting the true name for the fictitious name where it appears in the
7 | complaint. PLAINTIFFS are informed and believe, and thereupon alleges Defendant, DEPUTY
8 | DANIEL ESQUEDA ("ESQUEDA"), is now, and at all material times was employed as a sheriff,
9 | deputy, sergeant, detective, and/or civilian employee, agent and representative of the LAW
10 | ENFORCEMENT DEFENDANTS.

11 |     12.   Upon the filing of the initial complaint, the plaintiffs, being ignorant of the true name
12 | of the defendant and having designated the defendant in the complaint by the fictitious name of
13 | DOE 3 and having discovered the true name of the defendant to be JEREMIAH SONG amends the
14 | complaint by substituting the true name for the fictitious name where it appears in the complaint.
15 | PLAINTIFFS are informed and believe, and thereupon alleges Defendant, DEPUTY JEREMIAH
16 | SONG ("SONG"), is now, and at all material times was employed as a sheriff, deputy, sergeant,
17 | detective, and/or civilian employee, agent and representative of the LAW ENFORCEMENT
18 | DEFENDANTS.

19 |     13.   Upon the filing of the initial complaint, the plaintiffs, being ignorant of the true name
20 | of the defendant and having designated the defendant in the complaint by the fictitious name of
21 | DOE 4 and having discovered the true name of the defendant to be ALLISON MELENDEZ
22 | amends the complaint by substituting the true name for the fictitious name where it appears in the
23 | complaint. PLAINTIFFS are informed and believe, and thereupon alleges Defendant, DEPUTY
24 | ALLISON MELEDEZ ("MELENDEZ"), is now, and at all material times was employed as a
25 | sheriff, deputy, sergeant, detective, and/or civilian employee, agent and representative of the LAW
26 | ENFORCEMENT DEFENDANTS.

27
28

**PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DAMAGES**

14. In doing the acts alleged in this Complaint, defendants DEPUTY VANCE, DEPUTY ESQUEDA, DEPUTY SONG, and DEPUTY MELENDEZ (hereinafter collectively "DEPUTIES") were acting under the color of statutes, ordinances, regulations, customs, laws, and usages of the Los Angeles County Sheriff's Department, an agent of DEFENDANT COUNTY, and the State of California and under the authority of their respective offices.

15. The true names and/or capacities, whether individual, corporate, associate or otherwise, of DOES 5 through 100, inclusive, and each of them, are unknown to PLAINTIFFS, who therefore sues said DEFENDANTS by such fictitious names. PLAINTIFFS are informed and believe, and thereupon allege, that each of the DEFENDANTS fictitiously named herein as a DOE is legally responsible, negligently or in some other actionable manner, for the events and happenings hereinafter referred to and that said DEFENDANTS proximately caused the injuries to PLAINTIFFS, as hereinafter alleged. The PLAINTIFFS will seek leave of court to amend this Complaint to insert the true names and/or capacities of such fictitiously named DEFENDANTS when the same has been ascertained.

16. PLAINTIFFS are informed and believes, and thereupon alleges, that at all times mentioned herein DEFENDANTS DOES 5-100 were engaged in the acts, deeds or conduct by and through one or more of its officers, sheriffs, deputies, sergeants, detectives, and/or civilian employees, and representative directors, agents, employees or representatives who were actively engaged in the management, direction, control or transactions of COUNTY OF LOS ANGELES, and LOS ANGELES COUNTY SHERIFF'S DEPARTMENT'S ordinary business affairs. PLAINTIFFS are informed and believe and thereupon allege that at all times relevant hereto each of the COUNTY, DEPUTIES, and DOES 5-100, inclusive, were the agents, affiliates, officers, director, manager, principal, alter-ego and/or employee of the other defendants and was at all times acting within the scope of such agency, affiliation, alter-ego relationship and/or employment and actively participated in, or subsequently ratified and adopted, or both, each and all of the acts or conduct alleged herein, with full knowledge of all the facts and circumstances, including, but not

–5–

**PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DAMAGES**

1   limited to, full knowledge of each and all of the violations of PLAINTIFFS' rights and the

2   damages to PLAINTIFFS proximately caused thereby.

3       17.  PLAINTIFFS herein refer collectively to the COUNTY OF LOS ANGELES,

4   DEPUTIES and DOES 5-100 as the "LAW ENFORCEMENT DEFENDANTS."

### III.

### JURISDICTION AND VENUE

7       18.  This Court has jurisdiction over Defendant COUNTY.  COUNTY is a government

8   entity organized under California law and existing in the county of Los Angeles, within the State of

9   California.

10       19.  Venue is proper in the United States District Court Central District of California

11   Central Western Division pursuant to 28 U.S.C.A § 1331.

### IV.

### GENERAL ALLEGATIONS

14       20. On or about January 4, 2012, JAZMYNE HA ENG was brutally shot and killed by Los

15   Angeles County Deputies at THE LOCATION.

16       21. JAZMYNE HA ENG died at THE LOCATION and was pronounced dead at 3:36 P.M.

17       22. On or about January 4, 2012 at 10:30 A.M. JAZMYNE HA ENG arrived at THE

18   LOCATION and took a seat in the lobby.  JAZMYNE HA ENG was well-known to the workers

19   of the APFC and her community.  She was known to be gentle and non-violent.  In addition,

20   JAMYNE HA ENG worked as an employee, volunteered, and regularly participated in activities

21   and workshops at the APFC.  She was considered to be a high functioning schizophrenic.

22       23. On or about January 4, 2012 JAZMYNE HA ENG patiently sat in the lobby of the

23   APFC for over five (5) hours.

24       24. On or about January 4, 2012, at 3:28 P.M., the APFC called the Temple Station

25   dispatch desk stating that there was a "low-level threat emergency situation."  Further, APFC

26   stated that JAZMYNE HA ENG had been "waiting in the lobby very calmly with a ball-peen

27   hammer in her lap." The director also informed the dispatcher that JAZMYNE HA ENG was

28

**PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DAMAGES**

"middle-aged, female, small-stature who is known to [them] as a patient" and that she was mentally ill. APFC requested that the Deputies meet the director outside the front door, and provided the dispatcher with the director's cell phone number. He did not want the situation to escalate; Eng had been calmly waiting in the APFC lobby all day.

25. PLAINTIFFS are informed, believe, and thereupon allege that the APFC director requested a code "2" – as Eng was not violent and calm. The, sheriff department said "they don't do that, and the deputies would meet the director outside the clinic. The Director of the clinic was calling in a nonviolent 5150 hold.

26. PLAINTIFFS are informed and believe, and thereupon allege, that Los Angeles County Sheriff's Department (hereinafter "LACSD") has a Mental Evaluation Team ("MET") that works directly with the Department of Mental Health, and is supposed to be specially trained to deal with mentally ill suspects. PLAINTIFFS are informed and believe, and thereupon allege, that the LACSD did not send the MET to deal with a "low-level" threat by a mentally ill patient patiently waiting to see her doctor at a mental health facility.

27. Instead of sending trained deputies to treat JAZMYNE HA ENG, the LACSD sent DEPUTIES who were untrained in dealing with mentally ill suspects.

28. On or about January 4, 2012, subsequent to the director's call for service, the DEPUTIES arrived at the APFC. What happens after the DEPUTIES arrive is highly disputed.

29. The DEPUTIES claim that JAZMYNE HA ENG was has holding a hammer, and refused to drop the hammer. In effort to subdue JAZMYNE HA ENG, deputy ESQUEDA attempted to taser JAZMYNE HA ENG. However, the taser either malfunctioned and/or missed JAZMYNE HA ENG completely. According to the deputy, supposedly after attempting to tase JAZMYNE HA ENG, JAZMYNE HA ENG raised the hammer over her head, and 6'7" 235 plus pounds deputy VANCE feared for his life and/or the lives of the three other deputies in the room and shot JAZMYNE HA ENG twice. She was twenty (20) feet away from the deputies when she was shot and killed.

1    30. An APFC employee eye witness stated that when the DEPUTIES burst into the lobby

2    of the APFC, JAZMYNE HA ENG was scared and attempting to hide behind a water cooler.

3    When the DEPUTIES entered, the only people in the lobby were JAZMYNE HA ENG's

4    therapist, JAZMYNE HA ENG, and the DEPUTIES. Within moments of entering the lobby, the

5    DEPUTIES screamed at JAZMYNE HA ENG to drop the hammer. Immediately after the

6    command to drop the hammer, the APFC employee heard one of the DEPUTIES shout "tase her."

7    31. Shortly after the therapist head the taser deploy, the APFC employee left the lobby,

8    leaving the DEPUTIES alone in the lobby with JAZMYNE HA ENG, and heard a zapping sound.

9    She returned to the lobby to see JAZMYNE HA ENG limp leaning against the back wall of the

10   APFC, JAZMYNE HA ENG was incapacitated. At this time, the APFC employee walked up to

11   JAZMYNE HA ENG, and did not see the ball-peen hammer. Thinking that the DEPUTIES had

12   resolved the situation, the APFC left the lobby. To her astonishment, moments after she left the

13   room, she heard two loud bangs, and smelled something like fireworks. To her horror, when she

14   returned to the lobby, one of the DEPUTIES informed her that the scene was now a homicide

15   investigation, and asked the employee to leave the lobby.

16   32. At no point was JAZMYNE HA ENG informed that the DEPUTIES would shoot if

17   JAZMYNE HA ENG did not follow instructions.

18   33. At no point did JAZMYNE HA ENG make any threatening comments towards the

19   DEPUTIES.

20   34. At no point did JAZMYNE HA ENG make any threatening movements directed

21   towards the DEPUTIES.

22   35. At no point was JAZMYNE HA ENG within twenty-feet of the DEPUTIES.

23   36. The DEPUTIES failed to asses the situation by failing to communicate with mental

24   health experts on site to learn about JAZMYNE HA ENG's condition, ultimately leading to

25   JAZMYNE HA ENG's untimely death. A reasonable law enforcement officer would not have

26   discharged his or her service weapon and killed JAZMYNE HA ENG under the same

27   circumstances because: (a) JAZMYNE HA ENG posed no real, immediate or significant threat of

28

-8-

**PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DAMAGES**

1   death to the DEPUTIES or the public that would necessitate deadly force; (b) JAZMYNE HA

2   ENG was severely outnumbered by the DEPUTIES and her petite size and stature should not have

3   threatened three male and a female, trained, fully armed, and in heavy body armor, deputies; (c)

4   the dispatcher was notified by Dr. Glen Masuda of the APFC that JAZMYNE HA ENG was

5   mentally ill and peacefully waiting in the lobby and posed no immediate threat; and (d) there were

6   several alternative means of responding to the situation without resulting to the most extreme

7   level of force—deadly force.   The deputies were armed with full body armor, tasers, non-lethal

8   batons, and SAP weapons.   The deputies outnumbered ENG four to one.   The DEPUTIES made

9   no reasonable attempt to asses the situation and protect human life.   The DEPUTIES, despite

10  being provided with the mental health directors cell phone number and having him available,

11  made no attempt to learn of the condition of ENG was suffering from.   The DEPUTIES did not

12  attempt to communicate with ENG other than to threaten and scare her.   Within seconds of

13  barging into the mental health facility lobby, ENG was shot.   ENG was at least twenty feet from

14  the DEPUTIES when she was shot.   The deputy who used lethal force is over 6'7" and over 230

15  pounds.   No deputy instructed ENG that she was going to be shot.   Within two to three seconds of

16  busting through the lobby door ENG was shot dead.     The mental health therapist stated

17  JAZMYNE HA ENG was calm, nonviolent and scared attempting to hide behind a sparkletts

18  water bottle when the deputies burst into the lobby and shot JAZMYNE HA ENG

19          37. As a result of poor training, lack of policies in place to properly handle mentally ill

20  people, or pure careless and reckless disregard for human life by the DEFENDANTS, DEPUTIES

21  carelessly and recklessly shot and killed JAZMYNE HA ENG.    Like the countless other

22  documented episodes of law enforcement officers using excessive force, this incident would

23  similarly end with the LACSD trying to protect its employees by encouraging a "code of silence,"

24  and allowing the DEPTUIES to fabricated what actually happened inside the lobby at the APFC

25  on January 4, 2012.

26

27

28

**PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DAMAGES**

38. The DEPUTIES' use of deadly force was unprovoked and malicious. At no point did JAZMYNE HA ENG pose any sort of threat that would warrant the use of such deadly force. Despite this, the DEPUTIES responded with unreasonable, excessive and deadly force.

39. At all times relevant hereto, DEFENDANT COUNTY was responsible for the training of all deputies and/or officers of Defendant COUNTY in the proper use of firearms in the performance of their duties as deputies. Defendant DEPUTIES were trained by the LACSD, in the use of firearms in accordance with the statutes, ordinances, regulations, customs, and usages of the DEFENDANTS and the State of California. DEFENDANTS were also responsible for enforcing the regulations of the COUNTY and CITY and for ensuring that law enforcement personnel obeyed the laws of the State of California and the United States of America.

40. By reason of the aforementioned acts of DEFENDANTS, and each of them, PLAINTIFFS were compelled to secure the services of an attorney at law to redress the wrongs herein mentioned and by virtue thereof, PLAINTIFFS are indebted and liable for attorney's fees.

41. As a result of the unwarranted and excessive use of force, JAZMYNE HA ENG suffered a tragic and unnecessary death. JAZMYNE HA ENG's family, PLAINTIFFS, has also suffered from the tragic and wrongful death of their beloved family member. PLAINTIFFS have been injured in the mind and have suffered severe emotional distress from the heartbreaking death of JAZMYNE HA ENG.

## FIRST CAUSE OF ACTION
### VIOLATION OF FEDERAL CIVIL RIGHTS (42 U.S.C. § 1983)
### (Against all Defendants)
### (Formerly Cause of Action Number 6)

42. PLAINTIFFS hereby incorporate by reference each and every allegation contained in the foregoing paragraphs, as though each was fully set forth at length herein.

43. That LAW ENFORCEMENT DEFENDANTS, and each of them, including DEPUTIES hat COUNTY DEFENDANTS, by and through its agents, and DEPUTIES, and each of them, used unreasonable and excessive force to arrest JAZMYNE HA ENG. At no time did

1   any actions or inactions of JAZMYNE HA ENG warrant the use of the unreasonable and

2   excessive force engaged in by the COUNTY.

3        44. Both prior to and during the time in which she was shot, JAZMYNE HA ENG posed

4   no reasonable threat of violence justifying the use of both a TASER and the discharge of the

5   DEPUTIES' service weapons.   Both prior to and during the time in which she was shot,

6   JAZMYNE HA ENG made no aggressive movement, no furtive actions, and no physical

7   movements which would suggest to a reasonable deputy that JAZMYNE HA ENG had the ability

8   to inflict substantial bodily harm against any individual. Both prior to and during the time in

9   which DEPUTIES shot JAZMYNE HA ENG with a TASER then subsequently with their service

10  weapons, they were not faced with any circumstances which would have led a reasonable deputy

11  to believe that JAZMYNE HA ENG posed a risk of death, or serious bodily injury to any person.

12  Both prior to and during the time in which defendant deputies shot JAZMYNE HA ENG, she did

13  not consent to the use of force used upon her.

14       45. Prior to the time in which she was shot, JAZMYNE HA ENG had waited patiently for

15  up to five hours in the lobby of the APFC without posing a threat to anybody.

16       46. This action at law for money damages arises under Title 42 U.S.C § 1983 and the

17  United States Constitution, the laws of the State of California and common law principles to

18  redress a deprivation under color of state law of rights, privileges and immunities secured to

19  JAZMYNE HA ENG by said statutes, and by the First, Fourth, and Fourteenth Amendments of

20  the United States Constitution.

21       47. Commencing at or about the aforementioned date and place, without cause, authority

22  or justification, and acting or purporting to act under color of law and in the performance of

23  his/her duties the individual LAW ENFORCEMENT DEFENDANTS and each of them,

24  intentionally, outrageously and maliciously deprived JAZMYNE HA ENG of rights secured to

25  her by the First, Fourth, and Fourteenth Amendments to the United States Constitution.

26       48. LAW ENFORCEMENT DEFENDANTS, and each of them, carried out and

27  perpetrated the mutually supportive conspiracy to deprive JAZMYNE HA ENG of rights against

28

-11-

**PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DAMAGES**

1  due process of law and liberty interests secured thereby, including the right to be free from
2  excessive and unreasonable force.

3      49. As a proximate result of the aforesaid acts and omissions of the LAW
4  ENFORCEMENT DEFENDANTS, JAZMYNE HA ENG sustained great physical and mental
5  pain and shock to her nervous system, experienced fear, anxiety, torment, degradation, emotional
6  distress, and ultimately died from the direct and unjustified acts of the DEPUTIES.

7      50. In addition, by reason of the aforementioned acts and omissions of the the individual
8  LAW ENFORCEMENT DEFENDANTS and each of them, PLAINTIFFS suffered special and
9  general damages in an amount to be proven at trial.

10     51. The LAW ENFORCEMENT DEFENDANTS', and each of their activities, conduct,
11 and behavior, in their use of excessive and unreasonable force, was a substantial factor in causing
12 PLAINTIFFS harm.

13     52. By reason of the aforementioned acts of the LAW ENFORCEMENT
14 DEFENDANTS, and each of them, PLAINTIFFS were compelled to secure the services of an
15 attorney at law to redress the wrongs herein mentioned and by virtue thereof, PLAINTIFFS are
16 indebted and liable for attorney's fees.

17     53. The aforementioned acts and omissions of the LAW ENFORCEMENT
18 DEFENDANTS, and each of them, was committed knowingly, willfully and maliciously, with the
19 intent to harm, injure, vex, harass and oppress JAZMYNE HA ENG with a conscious and
20 deliberate disregard of JAZMYNE HA ENG's constitutional rights and by reason thereof,
21 PLAINTIFFS seek punitive and exemplary damages from LAW ENFORCEMENT
22 DEFENDANTS, and each of them, in an amount as proved at trial.

23 ///
24 ///
25 ///
26 ///
27 ///
28

**PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DAMAGES**

## SECOND CAUSE OF ACTION
## LOCAL GOVERNMENT LIABILITY (42 U.S.C. § 1983)
### (Against DEFENDANT COUNTY)
### (Formerly Cause of Action Number 8)

54. PLAINTIFFS hereby incorporate by reference each and every allegation contained in the foregoing paragraphs, as though each was fully set forth at length herein.

55. Defendant COUNTY is and at all times herein mentioned has been a public entity and an incorporated municipality duly authorized and existing as such in and under the laws of the State of California and at all times herein mentioned, Defendant COUNTY possessed the power and authority to adopt policies and prescribe rules, regulations and practices affecting the operation of the LOS ANGELES COUNTY SHERIFF'S DEPARTMENT (LACSD) and its tactics, methods practices, customs and usages.

56. At all times herein mentioned, DEPUTIES and each of them, were officers, sheriffs, deputies, sergeants, detectives, and/or civilian employees, representatives, directors, or agents, acting under the COUNTY's, and LACSD's direction and control, who knowingly and intentionally promulgated, maintained, applied, enforced and suffered the continuation of policies, customs, practices and usages in violation of the First, Fourth, and Fourteenth Amendments respectively to the United States Constitution.

57. The unconstitutional policies, practices or customs promulgated, sanctioned or tolerated by LACSD include, but are not limited to:

    a. LACSD's knowledge, prior to and since this incident, of similar allegations of wrongful and unlawful shootings, dishonest justification of the use of excessive force, and corruption by LACSD employees, including the individual DEFENDANTS herein, and refused, with deliberate indifference, to enforce established administrative procedures to insure public safety, protect citizens' rights and the PLAINTIFFS' liberty interests;

    b. LACSD refused to adequately discipline individual employees found to have

committed similar acts of misconduct;

   c.  LACSD refused to competently and impartially investigate allegations of abuse and misconduct alleged to have been committed by law enforcement employees;

   d.  LACSD reprimanded, threatened, intimidated, demoted and fired employees who reported acts of abuse by other law enforcement employees;

   e.  DEFENDANTS covered up acts of misconduct and abuse by law enforcement employees and sanctioned a code of silence by and among LACSD deputies;

   f.  LACSD failed to adequately supervise the actions of employees under its control;

   g.  LACSD tacitly condone and encourage a conspiracy of silence among its employees for the purpose of concealing and furthering wrongful and illegal conduct;

   h.  LACSD tacitly condone and encourage use of excess force on citizens and refuses to enforce or teach stated policies;

58. The LACSD has a longstanding practice and/or custom of using excessive force against mentally ill suspects, and/or attempting to cover up and discourage complaints of excessive force:

   a.  On July 17, 2012, Alexis Torres was kicked in the head by a Sheriff's Department Deputy during an arrest, after the suspect was subdued.

   b.  On January 9, 2012, a Sheriff Deputy elbowed a mentally ill woman in the face on a bus in Lakewood.

   c.  In 2011, Deputy Joshua Sather resigned after he was forced to beat a mentally ill inmate.

   d.  In February 2008, Edgar Richard Jr. was beaten close to death by a Deputy who knew he was mentally ill.

**PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DAMAGES**

e.   On January 11, 2012 the Los Angeles Times published an article that stated L.A. County Jailers, who are Sheriff's Deputies, are more likely to use force on mentally ill inmates.

f.   Capt. Daniel Cruz, head of the Men's Central Jail, has been accused of producing an enviornment of violence and hiding and discouraging complaints against deputies.  Cruz has been accused of covering up dozens of instances of deputy misconduct against prison inmates, who are predominately mentally ill.  The FBI is currently investigating multiple cases of officer misconduct cover up under the Cruz administration.

g.   In December 2010, Capt. Daniel Cruz was allegedly at a Los Angeles County Sheriff's Department holiday Christmas party when a fight broke out, and police were called to the scene.  However, in attempt to protect his deputies, Capt. Daniel Cruz allegedly informed Montebello police that law enforcement officials were already scene.  Five of the suspects worked for the Men's County Jail.

h.   PLAINTIFFS are informed and believe, and thereupon allege that in 2012, a former Sheriff's Department Lieutenant testified in front of the county jails commission that Capt. Cruz encouraged letting excessive force investigations fade away, and avoided stopping jailor mistreatment.

i.   In September 2011, Juan Pablo Reyes was severely beaten by deputies, the deputies fractured an orbital bone, and then the deputies allowed gang members to sexually assault Reyes.  The ACLU investigated the alleged beating and submitted a report with 72 sworn affidavits by inmates and civilians who witnessed the beating.

j.   In May of 2011, Gabriel Carrillo was viciously beaten while trying to visit his brother in jail.  Gabriel Carrillo was not an inmate.

k.   According a department captain, Cruz's slogan was "not in the face."

**PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DAMAGES**

l.     Cruz was relieved of his duties in 2011 amid an investigation by the FBI into inmate abuse.

m.    PLAINTIFFS are informed and believe, and thereupon allege that Capt. Cruz practices and/or policies encouraged a company wide code of silence.

59. LACSD fostered and encouraged an atmosphere of lawlessness, abuse and misconduct, which by January 4, 2012, and thereafter, represented the unconstitutional policies, practices and customs of the DEPUTIES.

60. Plaintiffs are informed and believe, and thereupon allege that a Sheriff's deputy begins his or her career working as an officer in the county jails.

61. Capt. Cruz taught deputies of the LACSD's policy and/or practice of using excessive force against inmates, and of encouraging deputies to protect other deputies from charges of excessive force.

62. On January 4, 2012, DEPUTIES continued the COUNTY's policy of discriminating against JAZMYNE HA ENG, a mentally ill patient seeking help from her doctor, by brutally murdering ENG.

63. The COUNTY knew or should have known that unconstitutional policies, practices and customs promulgated, maintained, applied, and enforced by LACSD were likely to result in a deprivation of the rights secured by the First, Fourth, and Fourteenth Amendments to the United States Constitution, including the use of unreasonable and excessive force.

64. Commencing at or about the aforementioned date and place, without cause, authority or justification, and acting or purporting to act under color of law and in the performance of his/her duties, the COUNTY intentionally, outrageously and maliciously deprived JAZMYNE HA ENG of rights secured to her by the First, Fourth, and Fourteenth Amendments to the United States Constitution.

65. By reason of the aforesaid policies, customs, practices and usages, JAZMYNE HA ENG's First, Fourth and Fourteenth Amendments to the United States Constitution were violated.

///

**PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DAMAGES**

### THIRD CAUSE OF ACTION

### FAILURE TO TRAIN (42 U.S.C. § 1983)

### (Against DEFENDANT COUNTY)

### (Formerly Cause of Action Number 9)

66. PLAINTIFFS hereby incorporate by reference each and every allegation contained in the foregoing paragraphs, as though each was fully set forth at length herein.

67. PLAINTIFFS are informed and believe and thereupon allege that COUNTY failed to adequately train its officers, sheriffs, deputies, sergeants, detectives, and/or civilian employees, representatives, directors, or agents how to deal with mentally ill suspects.

68. PLAINTIFFS are informed and believe, and thereupon allege that the deputies who responded were not trained in how to deal with citizens suffering from mental health illnesses. The dispatch call went out to untrained and unsupervised deputies.  The deputy who shot and killed JAZMYNE HA ENG was not trained or radioed to respond.  He unilaterally chose to respond to the call stated "insane woman with weapon."

69. PLAINTIFFS are informed and believe, and thereupon allege that the LACSD has a training program where deputies work with mental-health workers who teach the deputies how to best handle mentally ill suspects.

70. PLAINTIFFS are informed and believe, and thereupon allege that the training helps deputies learn how to relate to mentally ill suspects and how to de-escalate encounters who mentally ill suspects.

71. PLAINTIFFS are informed and believe, and thereon allege that the LACSD has a special team of officers who have had at least forty (40) hours of mental illness training who are called upon to handle encounters with mentally ill suspects.

72. PLAINTIFFS are informed and believe, and thereon allege that DEFENDANT COUNTY did not provide DEPUTIES with any mental illness training.

73. The COUNTY's failure to train its officers, sheriffs, deputies, sergeants, detectives, and/or civilian employees, and representative directors, agents, employees or representatives, how

-17-

**PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DAMAGES**

to adequately handle mentally ill suspects has lead to numerous occasion of police misconduct towards people with mental illnesses.  Including but not limited to the following occurrences:

a.    On July 17, 2012, Alexis Torres was kicked in the head by a Sheriff's Department Deputy during an arrest, after the suspect was subdued.

b.    On January 9, 2012, a Sheriff Deputy elbowed a mentally ill woman in the face on a bus in Lakewood.

c.    In 2011, Deputy Joshua Sather resigned after he was forced to beat a mentally ill inmate.

d.    In February 2008, Edgar Richard Jr. was beaten close to death by a Deputy who knew he was mentally ill.

e.    On January 11, 2012 the Los Angeles Times published an article that stated L.A. County Jailers, who are Sheriff's Deputies, are more likely to use force on mentally ill inmates.

f.    On January 11, 2012 the Los Angeles Times published an article that stated L.A. County Jailers, who are Sheriff's Deputies, are more likely to use force on mentally ill inmates.

.g.    Capt. Daniel Cruz, head of the Men's Central Jail, has been accused of producing an environment of violence and hiding and discouraging complaints against deputies.  Cruz has been accused of covering up dozens of instances of deputy misconduct against prison inmates, who are predominately mentally ill.  The FBI is currently investigating multiple cases of officer misconduct cover up under the Cruz administration.

h.    In December 2010, Capt. Daniel Cruz was allegedly at a Los Angeles County Sheriff's Department holiday Christmas party when a fight broke out, and police were called to the scene.  However, in attempt to protect his deputies, Capt. Daniel Cruz allegedly informed Montebello police that law enforcement

-18-

**PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DAMAGES**

1  officials were already scene. Five of the suspects worked for the Men's

2  County Jail.

3       i.     PLAINTIFFS are informed and believe, and thereupon allege that in 2012, a

4  former Sheriff's Department Lieutenant testified in front of the county jails

5  commission that Capt. Cruz encouraged letting excessive force investigations

6  fade away, and avoided stopping jailor mistreatment.

7      74. PLAINTIFFS are informed and believe, and thereupon allege that failing to train

8  LACSD deputies how to de-escalate encounters with the mentally ill, creates a highly predictable

9  consequence that deputies will use force instead of using special tactics to calmly de-escalate an

10  encounter with a mentally ill person.

11      75. By not training DEPUTIES how to de-escalate encounters with the mentally ill, there

12  is a high likelihood that deputies will not understand how to handle situations with mentally ill

13  people and use excessive force.

14      76. By failing to train deputies how to deal with mentally ill people and/or by failing to

15  teach deputies to contact a MET team and/or any mental health physicians onsite, there is a high

16  likelihood that deputies will use unnecessary force.

17      77. COUNTY knew or should have known that inadequate training promulgated,

18  maintained, applied, and enforced by LACSD deputies was likely to result in a deprivation of the

19  rights secured by the First, Fourth, and Fourteenth Amendments to the United States Constitution,

20  including the use of unreasonable and excessive force.

21      78. The COUNTY was deliberately indifferent to the obvious consequences of its failure

22  to train its employees with respect to responding to calls for service dealing with mentally ill

23  people.

24      79. The COUNTY's failure to provide adequate training to its employees caused the

25  deprivation of the JAZMYNE HA ENG's rights, and their failure to train is so closely related to

26  the deprivations complained of in this action of JAZMYNE HA ENG's constitutional rights as to

27  be the moving force causing his injuries.

28

-19-

80. Commencing at or about the aforementioned date and place, without cause, authority or justification, and acting or purporting to act under color of law and in the performance of its duty, the COUNTY, intentionally, outrageously and maliciously deprived JAZMYNE HA ENG of rights secured to her by the Fourth Amendment to the United States Constitution.

81. As a direct and proximate result of the aforementioned breaches, including failure to provide adequate training, JAZMYNE HA ENG and PLAINTIFFS suffered pain, mental anguish, emotional distress and physical distress, and was injured in mind and body, causing damage in a sum within the jurisdiction of this court and according to proof at trial.

## PRAYER FOR RELIEF

Wherefore, PLAINTIFFS pray for judgment and relief as follows:

1. For general damages to be proven at trial;
2. For special damages to be proven at trial;
3. For prejudgment interest;
4. For attorney's fees;
5. For the costs of this action; and
6. For any further legal and equitable relief the Court deems proper.

## DEMAND FOR JURY TRIAL

PLAINTIFFS hereby demand a jury trial.

Dated:  June 7, 2013                                    G I R A R D I | K E E S E

BY: _____

                                                       ROBERT W. FINNERTY

                                                       Attorney for Plaintiffs

-20-

**PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DAMAGES**

## PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 1126 Wilshire Boulevard, Los Angeles, California 90017.

On **June 7, 2013** I served the foregoing documents described as **PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DAMAGES** on all interested parties in this action as set forth on the attached service list in the following manner:

☑ **BY MAIL:** I am familiar with this firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐ **BY FACSIMILE:** In addition to service by mail as set forth above, a copy of said document(s) was also delivered by facsimile transmission to the addressee(s) pursuant to Code of Civil Procedure §1013(e).

☐ **BY OVERNIGHT MAIL:** I caused said document(s) to be picked up by FEDERAL EXPRESS, an overnight delivery service company, for delivery to the addressees on the next business day.

☐ **BY PERSONAL SERVICE:** By causing personal delivery of the document listed above to the person at the address set forth on the attached service list.

☐ **BY ELECTRONIC SERVICE:** Pursuant to Court Order, I caused the above document to be sent to the listed addressee(s) in the attached service list via Verilaw e-serve.

☐ STATE    I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

☑ FEDERAL    I declare that I am employed in the office of the member of the bar of this court at whose direction the service was made.

Executed on **June 7, 2013** at Los Angeles, California.

_____
TRACEY FAUST

1

**PROOF OF SERVICE**

**PROOF OF SERVICE MAILING LIST/February, 2013**
**ENG, ET AL., V. PACIFIC CLINICS, ET AL.**

Thomas C. Hurrell, Esq.
Erica Bianco, Esq.
Jessica Brynn Coffield, Esq.
Hurrell Cantrall LLP
700 South Figueroa Street, Suite 900
Los Angeles, CA  90071-4121
213.426.2000
FAX: 213.426.2020
thurrell@hurrellcantrall.com
ebianco@hurrellcantrall.com
jcoffield@hurrellcantrall.com
**Attorneys for Defendants:  THE COUNTY OF LOS ANGELES; THE LOS ANGELES**
**SHERIFFS DEPARTMENT**

Robert L. McKenna, III, Esq.
Carrie H. Weinstein, Esq.
Carroll Kelly Trotter Franzen & McKenna
111 West Ocean Blvd., 14th Floor
P.O. Box 22636
Long Beach, CA  90801-5636
562.432.5855
FAX:  562.432.8785
rlmckenna@cktfmlaw.com
chweinstein@cktrmlaw.com
**Attorneys for Defendant:  PACIFIC CLINICS**

**PROOF OF SERVICE**